**Jouko M. HILSKA, Plaintiff,**

v.

**Boisfeuillet JONES, Jr. et al., Defendants.**

No. CIV.A. 02–1042(RMU).

United States District Court, District of Columbia.

June 18, 2003.

Jouko M. Hilska, Helsinki, FN, Pro se.

Eric Neil Lieberman, Robert Ernest Leidenheimer, Jr., U.S. Attorney's Office, Washington, DC, Daniel Karp, Allen, Karpinski, Bryant & Karp, Baltimore, MD, Mark E. Nagle, U.S. Attorney's Office, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

GRANTING THE NEW JERSEY DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

This matter comes before the court on on a motion by defendants Steven Siegel, a

sergeant employed with the Union County Prosecutor's Office in New Jersey, and Thomas Manahan, a Union County prosecutor (collectively, the "New Jersey defendants"), to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In challenging the *pro se* plaintiff's complaint, the New Jersey defendants question why the plaintiff has chosen to sue them in the District of Columbia when the alleged events giving rise to the plaintiff's claims occurred in New Jersey. Perhaps more to the point, the New Jersey defendants question whether the plaintiff can sue them in the District of Columbia at all. Because the plaintiff has failed to demonstrate any relationship between the District of Columbia and the New Jersey defendants, the court grants the New Jersey defendants' motion to dismiss.

## II. BACKGROUND

On May 28, 2002, the *pro se* plaintiff, a native and citizen of Finland, filed his complaint seeking compensatory damages and asserting various claims against 18 individual defendants, including former President Clinton, Senator Hillary Clinton, three different presidents of Finland, the publisher of the Washington Post, and the New Jersey defendants. Compl. at 1–3, 7, Ex. B (Decision of Immigration Judge dated Oct. 1, 1999).

The plaintiff claims, *inter alia*, that the defendants are responsible for "suppression of matters, destroying documents, blackmailing, organizing illegal action, . . . extortion, neglecting one's duty, . . . illegal imprisonment, assault[ ], . . . and falsifying documents." *Id.* at 4. The plaintiff promises that if the court allows this action to proceed, the plaintiff will reveal "the tragic and premature deaths of five Americans and two Europeans." *Id.* at 6. The plaintiff further claims that the United States

Immigration and Naturalization Service ("INS") wrongfully deported him from the United States and challenges certain decisions by a federal immigration court denying the plaintiff political asylum in the United States. *Id.* at 4–6.

The events giving rise to this action can be categorized by three separate immigration proceedings. The first set of proceedings began sometime in 1995 when the INS denied the plaintiff's application for asylum and subsequently deported him. *Id.* at 4.

The second set of proceedings was triggered in July 1999 when the plaintiff attempted to reenter the United States. *Id.* Ex. D at 1–2. INS found the plaintiff to be inadmissible into the country and referred the matter to the immigration court, whereupon the plaintiff requested political asylum. *Id.* At this point, the account of the events diverges. According to the immigration court, it then denied the plaintiff's request for asylum. *Id.* Ex. D at 5–6. According to the plaintiff, the immigration court initially granted him asylum, but President Clinton later invalidated the court's decision. *Id.* at 5. In July 2000, the plaintiff once again was deported from the United States. *Id.*

The third and final set of proceedings began in December 2000 when the plaintiff re-entered the United States. *Id.* Upon his re-entry, the plaintiff was arrested and eventually deported in June 2001. *Id.* at 5–6.

At some stage in these proceedings, the plaintiff apparently suffered harm in both the Union County Jail and Prosecutor's Office located in New Jersey. *See generally id.* The plaintiff alleges that he "was assaulted and . . . disturbed sexually" while imprisoned in New Jersey. *Id.* at 4. The plaintiff additionally claims that the Union County Prosecutor's Office exploit-

ed his testimony without proper compensation in connection with a trial. *Id.*

On August 30, 2002, the New Jersey defendants filed their motion to dismiss. The court now addresses their motion.

## III. ANALYSIS

The New Jersey defendants move to dismiss the plaintiff's complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, alternatively, for failure to state a claim on which the court could grant relief under Rule 12(b)(6). Because the plaintiff has failed to establish a sufficient connection between the District of Columbia and the New Jersey defendants for the court to exercise personal jurisdiction over these defendants, the court grants the defendant's Rule 12(b)(2) motion.

### A. Legal Standard for Personal Jurisdiction Over a Non-Resident Defendant

■ "To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C.Cir.2000).

First, a plaintiff must show that the personal jurisdiction may be grounded in one of the several bases provided by the District of Columbia's long-arm statute. D.C. CODE § 13–423; *GTE New Media Servs.,* 199 F.3d at 1347. That statute provides, *inter alia,* that personal jurisdiction exists over any person as to a claim for relief arising from the person's

(1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. CODE § 13–423(a). Subsection (b) qualifies the reach of the statute by noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13–423(b).

Second, the Due Process Clause of the Fifth Amendment to the U.S. Constitution requires the plaintiff to demonstrate " 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *GTE New Media Servs.,* 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see Price v. Socialist People's Libyan Arab Jamahiriya,* 294 F.3d 82, 95 (D.C.Cir.2002). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs.,* 199 F.3d at 1347 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444

U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

**B. The Court Grants the New Jersey Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(2)**

■ The New Jersey defendants assert that no relationship whatsoever exists between them and the plaintiff's chosen forum of the District of Columbia. N.J. Defs.' Mot. to Dismiss at 4. These defendants point out that the complaint fails to mention any such relationship and does not include any jurisdictional allegations. *See generally* Compl. In response, the plaintiff declares only that "I prosecute [defendant] Manahan for tighten [*sic*] up my situation, exploiting my testimony in court and pressuring." Pl.'s Opp'n to N.J. Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 1.

The court agrees with the New Jersey defendants. Aside from identifying the New Jersey defendants and where they reside, the complaint does absolutely nothing to relate the plaintiff's allegations or claims to these defendants. *Id.* Indeed, it is difficult to discern precisely what the claims against these defendants are, as they appear to relate to various events occurring from 1995 to 1998, including alleged assaults of the plaintiff in both the Union County Jail and Prosecutor's Office. *See generally id.* Suffice it to say that the plaintiff alleges personal injury claims arising from these events occurring in New Jersey. *Id.*

In examining whether the court may exercise jurisdiction over the New Jersey defendants under the District of Columbia's long-arm statute, the court concludes that it cannot. *GTE New Media Servs.*, 199 F.3d at 1347. The plaintiff has failed to demonstrate that personal jurisdiction is grounded in any of the several bases set forth under the District's long-arm statute. *Id.* The New Jersey defendants correctly note that, with respect to themselves, the plaintiff merely complains about events and injuries that occurred in New Jersey. Compl. at 4. In fact, not only does the plaintiff's complaint lack any jurisdictional statements that could conceivably provide a connection between the New Jersey defendants and this forum, but the plaintiff also fails to rebut the New Jersey defendants' position that they lack ties to this forum. N.J. Defs.' Mot. to Dismiss at 4. Further, the plaintiff's brief opposition refers to only one of the New Jersey defendants and simply reiterates a single vague allegation stated in the complaint. Pl.'s Opp'n at 1. Such flimsy allegations do nothing to meet the plaintiff's burden of establishing that this forum has jurisdiction over the New Jersey defendants. *See GTE New Media Servs.*, 199 F.3d at 1347; Pl.'s Opp'n at 1. Accordingly, the court grants the New Jersey defendants' motion to dismiss.[1]

### IV. CONCLUSION

For the foregoing reasons, the court grants the New Jersey defendants' motion to dismiss. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this ____ day of May 2003.

### *ORDER*

**GRANTING THE NEW JERSEY DEFENDANTS' MOTION TO DISMISS**

For the reasons stated in the court's Memorandum Opinion separately and con-

---

1. Even if the court were to determine that the plaintiff met the first prong of the court's two-part inquiry, the court still would grant the New Jersey defendants' motion to dismiss because the plaintiff does not meet the second prong by failing to demonstrate the necessary " 'minimum contacts' between the defendant and the forum.' " *GTE New Media Servs.*, 199 F.3d at 1347.

temporaneously issued this _____ day of May 2003, it is hereby

**ORDERED** that defendants Siegel and Manahan's motion to dismiss is **GRANTED**.

**SO ORDERED**.